UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BILLYE D. GAULDEN, SR., <br><br> Plaintiff, <br><br> v. <br><br> CENTORION HEALTH, *et al.*, <br><br> Defendants. | CAUSE NO. 3:25-CV-667-PPS-JEM |

## OPINION AND ORDER

Billye D. Gaulden, Sr., a prisoner without a lawyer, filed a complaint. [DE 1]. "Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Because Gaulden is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Gaulden, who is currently incarcerated at the Indiana State Prison (ISP), alleges he began experiencing flu-like symptoms along with high blood-pressure and high cholesterol in 2021. In 2024, his flu-like symptoms became worse, and he also began to

experience body aches and back pain. In the spring of 2025—he doesn't say exactly when—his diarrhea became "so constant and so unbearable" that he began to defecate in his sleep. [DE 1 at 3]. He filled out request for healthcare forms seeking treatment, but they were ignored. On April 18, 2025, he submitted another healthcare request form specifically asking to be tested for H. pylori and Legionella.[1] On April 29, 2025, a stool sample was taken. On May 1, 2025, that sample came back positive for H. pylori. Over the next few weeks, he submitted several additional healthcare request forms stating he continued to suffer from "headaches, stomach pain, body aches, and cold sweats." [*Id.* at 4]. He was ignored for "over 60 more days." [*Id.*] He has sued Centurion Health,[2] Dr. N. Marthakis, Healthcare Provider Diane, Warden Ron Neal, Assistant Warden Dawn Buss, and Grievance Specialist Josh Wallen for monetary damages in the amount of $250,000.

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the

---

[1] He did this after learning "several inmates" had tested positive for H. pylori about a year ago. [DE 1 at 4].

[2] He misspells this entity as "Centorion." [DE 1 at 1].

2

face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

3

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates the plaintiff's condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Gaulden has identified an H. pylori infection as a serious medical condition. H. pylori is a bacteria, and—while most people who become infected with it don't experience any symptoms—it can lead to stomach pain, bloating, gas, or peptic ulcers in some cases.[3] Regarding whether the individual medical defendants acted with

---

[3] *See Helicobacter pylori (H. pylori) infection*, Mayo Clinic, available at https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171 (last visited Sept. 25, 2025).

4

deliberate indifference, Gaulden's allegations are sparse. He claims he wrote several healthcare request forms, but he doesn't say when or to whom. He does assert, however, that he was "ignored and refused medical attention and treatment" by Dr. Marthakis and Provider Diane for "over 60-days after [he] tested positive for H. pylori." [DE 1 at 6]. Giving Gaulden the benefit of the inferences to which he is entitled at this stage, I will construe his allegations generously and assume Dr. Marthakis and Provider Diane were aware of his symptomatic H. pylori infection yet deliberately denied him any care. Thus, I find he has stated plausible Eighth Amendment claims against them.

Gaulden also sues Warden Ron Neal and Assistant Warden Dawn Buss. In general, there is no general *respondeat superior* liability under 42 U.S.C. § 1983. "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)). As the Seventh Circuit has explained:

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

5

*Burks*, 555 F.3d at 595; *see also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (stating that "[f]or a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights").

Gaulden alleges he wrote to Warden Neal and Assistant Warden Buss about his positive H. Pylori test and medical issues, but he doesn't say when or suggest that he did so more than once. He doesn't claim these officials prevented him from submitting medical requests or otherwise interfered with him receiving care directly from the medical professionals. Without more, Gaulden's allegations aren't sufficient to subject the Warden or Assistant Warden to personal liability related to his medical care. *See e.g., Aguilar*, 861 F.3d at 633 (division of labor in prisons is critical); *see also Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.").

Similarly, Gaulden has sued Grievance Specialist Josh Wallen for not responding to his grievances or providing him with the proper grievance appeal forms. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011); *see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). There is nothing to indicate Grievance Specialist Wallen was personally responsible for Gaulden's medical care. The mere fact that he failed to appropriately process grievances about other prison staff does not make him liable for constitutional violations they may have committed. *Daniel*, 833 F.3d at 736; *Burks*, 555 F.3d at 595; *see*

6

*also Moderson*, 137 F.4th at 618. The claims against Grievance Specialist Wallen will be dismissed.

As for Centurion Health, a private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). That said, a corporation cannot be held liable under a *respondeat superior* theory. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). Rather, "[i]n a case against a private contractor that provides healthcare to incarcerated people, the critical question for liability is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it)." *Id.* at 653–54 (internal quotation marks and citation omitted); *see also Johnson v. Cook Cty.*, 526 F. App'x 692, 696 (7th Cir. 2013) (The policy or custom must be the "moving force" behind the deprivation of his constitutional rights). Specifically, a corporation can be held liable for "an express policy that, when enforced, causes a constitutional deprivation." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Additionally, absent an unconstitutional policy, corporate liability may be established with a showing of "a widespread practice that, although not authorized by written law or express [corporate] policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). The key in these types of claims, however, is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell*, 987 F.3d at 654. What is needed is evidence

that there is a true municipal or corporate policy at issue, not a random event. *Id.* (internal quotation marks, brackets, and citations omitted).

Here, Gaulden doesn't describe any sort of policy, procedure, practice, or custom that would subject Centurion to liability. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original)). Therefore, I will dismiss the claims against this corporate defendant.

Gaulden also complains about the conditions of his confinement. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). The length of the deprivation is an important factor in determining whether conditions meet the objective prong of the analysis. *See, e.g., Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) ("An adverse condition of confinement, if endured over a significant time, can become

an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem."). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

Here, Gaulden speculates his H. pylori infection was caused by "drinking & bathing in contaminated water, eating food that was prepared with contaminated water and unsanitary pots, pans and trays." [DE 1 at 5]. He claims he was "exposed to very unsanitary conditions" including walls and bars with feces on them and toilets "caked" with feces. [*Id.* at 5–6]. He claims he was "refused" a toilet brush, so he had to clean the toilet with his hand, although he says he was provided with "chemicals to clean." [*Id.* at 6]. However, he doesn't say when this occurred or how long he was subjected to it.

Gaulden describes conditions that are troubling and asserts that he informed the Warden and Assistant Warden of these conditions but was ignored. In his complaint, Gaulden writes, "I've written the Warden, Mr. Ron Neal, Assistant Warden Mrs. Dawn Buss, and Major Warlow explaining all this and my positive test result for H. pylori." [DE 1 at 6]. Gaulden continues stating that he was ignored and refused medical treatment. [*Id.*] Certainly, the conditions described posed a threat to Gaulden's health. *Ellis v. Shurtz*, 2015 WL 7178234, at *4 (S.D. Ill. Nov. 16, 2015) ("Cell conditions may

9

violate the Eighth Amendment when they are so dangerous they threaten a prisoner's health."). And while Gaulden does not allege that the defendants were responsible for creating the conditions, prison officials can be held personally responsible when they have knowledge of dangerous conditions but fail to act. *Haywood v. Hathaway*, 842 F.3d 1026, 1032 (7th Cir. 2016) (explaining that prison officials can be found liable under the Eight Amendment for inhumane conditions of confinement where there is knowledge of the conditions and the risk to inmate health is disregarded); *Ellis*, 2015 WL 7178234, at *4 ("Prison officials may be held liable under § 1983 if they are aware of the dangerous nature of the conditions, but refuse to do anything about it."). For the purposes of notice pleading, Plaintiff has articulated a violation of his Eighth Amendment rights related to his conditions of confinement. Accordingly, I will allow him to proceed against Warden Neal and Assistant Warden Buss in their individual capacities on the conditions of confinement claim.

Finally, although he only specifically requests monetary damages, I will consider whether Gaulden may be entitled to a permanent injunction for his ongoing medical needs. The warden of a correctional facility has both the authority and the responsibility to ensure inmates receive the medical care to which they are entitled under the Eighth Amendment. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Even so, inmates cannot dictate how such medical care is provided. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of

10

the Federal right.") (internal quotation marks, brackets, and citations omitted)); *see also Forbes,* 112 F.3d at 267 (Inmates are "not entitled to demand specific care [nor] entitled to the best care possible."). Therefore, injunctive relief—if granted—must be limited to requiring correctional officials to provide medical care to the extent required by the Constitution.

Gaulden claims he tested positive for H. pylori bacteria and that the flu-like symptoms he has experienced since 2021 have recently become more severe in the spring of 2025. He claims he was ignored by Dr. Marthakis and Provider Diane for sixty days after his positive test, although he then goes on to state that a nurse named "Hope" saw he was in pain during medication pass and provided him with needed medication "on multiple occasions." [DE 1 at 6]. In any event, although his allegations are sparse, because Gaulden states he "continue[s] to suffer" from the flu-like symptoms and is "still being refused treatment" [*Id.* at 7], I will give him the benefit of the inferences to which he is entitled at this stage and allow him to proceed against the Warden in his official capacity for permanent injunctive relief.

**ACCORDINGLY**:

(1) Billye D. Gaulden, Sr., is **GRANTED** leave to proceed against N. Marthakis, M.D., and Provider Diane in their individual capacities for compensatory and punitive damages for being deliberately indifferent to his symptomatic H. pylori infection for at least sixty (60) days beginning on May 1, 2025, in violation of the Eighth Amendment;

(2) Billye D. Gaulden, Sr., is **GRANTED** leave to proceed against Warden Ron

Neal in his official capacity for permanent injunctive relief to assure he is provided with treatment for his symptomatic H. pylori infection as deemed medically necessary to comport with the Eighth Amendment;

(3) Billye D. Gaulden, Sr., is **GRANTED** leave to proceed against Warden Ron Neal and Assistant Warden Dawn Buss in their individual capacities for nominal, compensatory, and punitive damages for conditions of confinement in violation of the Eighth Amendment;

(4) **DISMISSES** all other claims;

(5) **DISMISSES** Centurion Health and Grievance Specialist Josh Wallen;

(6) **DIRECTS** the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal and Assistant Warden Dawn Buss at the Indiana Department of Correction, with a copy of this order and the complaint [DE 1];

(7) **DIRECTS** the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) N. Marthakis, M.D., and Provider Diane at Centurion Health of Indiana, LLC, with a copy of this order and the complaint [DE 1];

(8) **ORDERS** the Indiana Department of Correction and Centurion Health of Indiana, LLC to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(9) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Warden Ron Neal, Assistant Warden Dawn Buss, N. Marthakis, M.D., and Provider Diane to respond, as provided for in the

12

Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED** on September 25, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT